UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DUBLIN SPRINGS, LLC,

Plaintiff,

v.

EVANSTON INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, and NATIONAL FIRE & MARINE INSURANCE COMPANY,

Defendants.

Civil Action No. 3:26CV-941-CRS

**COMPLAINT**

Plaintiff, Dublin Springs, LLC ("Dublin Springs"), by its undersigned counsel, brings this action against Defendants, Evanston Insurance Company ("Evanston"), Illinois Union Insurance Company ("Illinois Union"), and National Fire & Marine Insurance Company ("National Fire") (Illinois Union and National Fire together, the "Excess Insurance Companies," and collectively with Evanston, "Defendants"), and in support thereof, alleges as follows:

## I. NATURE OF THIS ACTION

1. This insurance recovery action arises out of Evanston's improper reservation of rights to deny coverage for amounts that may become due under insurance policies that it sold to BH Eik Management, LP ("BH Eik"), under which Dublin Springs is an insured, including coverage for the jury verdict and resulting judgment entered against Dublin Springs on claims brought by a former hospital patient, Festus Sherman ("Sherman"), in the lawsuit captioned *Festus Sherman v. Dublin Springs, LLC, et al.*, Case No. 23CV008190 (the "Sherman Action").

2. Evanston has defended Dublin Springs in the Sherman Action subject to a reservation of rights. Following the verdict, by letter dated November 5, 2026 (the "November Letter"), Evanston further reserved its rights by alleging a purported right to seek reimbursement of defense costs, to deny coverage for the entire award on the basis of a policy exclusion for acts committed "in violation of any law or ordinance," to deny coverage for punitive damages on the ground that they are "uninsurable," and to deny coverage for any award of Sherman's attorneys' fees. Evanston's positions disregard the plain terms of the insurance policy it sold, which obligates Evanston to pay on behalf of its insured the monetary portion of any judgment for covered claims, and each of these positions is meritless.

3. Following Evanston's November Letter reserving its rights, each of the Excess Insurance Companies stated their intention to follow some or all of Evanston's coverage positions.

4. Accordingly, Dublin Springs brings this action against Defendants for declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 and Rule 57 of the Federal Rules of Civil Procedure. Dublin Springs asks this Court to declare its rights and the responsibilities of Defendants under the professional liability insurance coverage Defendants sold to BH Eik, and to declare that each basis for non-coverage Evanston has asserted, and the Excess Insurance Companies have followed or are expected to follow, is invalid.

## II. THE PARTIES

5. Plaintiff, Dublin Springs, LLC, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Brentwood, Tennessee with business operations at 7625 Hospital Drive, Dublin, Ohio 43016. Pursuant to LR 8.1, Dublin Springs resides in Brentwood, Tennessee. The sole member of Dublin Springs, LLC is Columbus Springs Behavioral Health, LLC, a limited liability company organized under the laws of the State of Delaware. The members of Columbus Springs Behavioral Health,

LLC are OhioHealth Corporation and Springstone Health Opco, LLC. OhioHealth Corporation is a not-for-profit corporation incorporated under the laws of the State of Ohio with its principal place of business in Columbus, Ohio, and is therefore a citizen of Ohio. Springstone Health Opco, LLC is a limited liability company organized under the laws of the State of Delaware, the sole member of which is LPNT Autumn Holdco, LLC. LPNT Autumn Holdco, LLC is a limited liability company organized under the laws of the State of Delaware, the sole member of which is Lifepoint Behavioral Health, LLC. Lifepoint Behavioral Health, LLC is a limited liability company organized under the laws of the State of Delaware, the sole member of which is Lifepoint Rehab, LLC. Lifepoint Rehab, LLC is a limited liability company organized under the laws of the State of Delaware, the sole member of which is Lifepoint Rehab Blocker, LLC. Lifepoint Rehab Blocker, LLC is a limited liability company organized under the laws of the State of Delaware, the sole member of which is Lifepoint Rehab Blocker Parent, LLC. Lifepoint Rehab Blocker Parent, LLC is a limited liability company organized under the laws of the State of Delaware, the sole member of which is Lifepoint Health, Inc., a corporation incorporated under the laws of the State of Delaware with its principal place of business in Brentwood, Tennessee. Springstone Health Opco, LLC is therefore a citizen of Delaware and Tennessee. Accordingly, for purposes of 28 U.S.C. § 1332, Dublin Springs is a citizen of Ohio, Delaware, and Tennessee.

6. Defendant, Evanston Insurance Company, is an insurance company organized and existing under the laws of the State of Illinois with its principal place of business located at 10275 W. Higgins Road, Suite 750, Rosemont, Illinois 60018. Pursuant to LR 8.1, Evanston resides in Cook County, Illinois.

7. Defendant, Illinois Union Insurance Company, is an insurance company organized and existing under the laws of the State of Illinois with its principal place of business located at

525 West Monroe Street, Suite 400, Chicago, Illinois 60661. Pursuant to LR 8.1, Illinois Union resides in Cook County, Illinois.

8. Defendant, National Fire & Marine Insurance Company, is an insurance company organized and existing under the laws of the State of Nebraska with its principal place of business located at 1314 Douglas Street, Omaha, Nebraska 68102. Pursuant to LR 8.1, National Fire resides in Douglas County, Nebraska.

## III. JURISDICTION AND VENUE

9. The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over each Defendant by virtue of its business activities within the Commonwealth of Kentucky, including the sale, issuance, and delivery of insurance policies in Kentucky to policyholders located in Kentucky, including the insurance policies that are the subject of this civil action.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that the insurance policies at issue were delivered to the named policyholder, BH Eik, in Louisville, Jefferson County, Kentucky, within this District. Pursuant to LR 3.2 and LR 8.1, this action is properly assigned to the Louisville Division.

## IV. THE INSURANCE POLICIES

### A. The Evanston Policies

12. BH Eik, based in Louisville, Kentucky, purchased from Evanston Specified Medical Professions Insurance Policy No. MKLV3PSM000927 for the policy period October 8, 2022 to October 8, 2023 (the "Primary Policy"). The Primary Policy's Specified Medical Professions Professional Liability Insurance Coverage Part (the "Professional Liability Coverage

Part") provides claims-made coverage with limits of liability of $1,000,000 each Claim and $3,000,000 in the aggregate, subject to a $100,000 each Claim deductible. Dublin Springs is an Additional Named Insured under the Primary Policy, and Evanston has acknowledged that Dublin Springs is an Insured and has provided it a defense to the Sherman Action under the Primary Policy. A copy of the Primary Policy is attached hereto as **Exhibit A**.

13. The Primary Policy obligates Evanston to "pay on behalf of the Insured all sums in excess of the Deductible amount . . . which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period . . . for Professional Personal Injury . . . [b]y reason of any act, error or omission in Professional Services."

14. As amended by the Hospital Amendatory Endorsement, the Primary Policy defines "Professional Personal Injury" to include "[a]ny bodily injury . . . of any natural person that is a patient of the Named Insured's hospital . . . receiving Professional Services arising out of an act, error or omission in Professional Services," and defines "Professional Services" to include "nursing, mental health services or treatments."

15. The Primary Policy defines "Damages" broadly as "the monetary portion of any judgment, award or settlement," subject to a list of specific exceptions. The standard policy form included among those exceptions "[p]unitive or exemplary damages." The Primary Policy, however, includes an Amendment of Definitions D.1. endorsement that deletes that exception and replaces it with a narrower one excluding only "[m]ultiplied portions of damages in excess of actual damages, including trebling of damages." As amended, the Primary Policy contains no exception for punitive damages, and punitive damages awarded in a judgment therefore fall within "the monetary portion of any judgment" that the Primary Policy covers as Damages.

16. The Primary Policy provides that Evanston "shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies." The payment of defense costs by Evanston under the Primary Policy is outside of, and in addition to, the indemnity limit.

17. The Declarations to the Primary Policy show that it was issued and delivered to BH Eik at its business address in Louisville, Kentucky

18. Evanston also sold to BH Eik Health Care an Umbrella Liability Policy No. MKLV3UHC000005 for the same policy period (the "Umbrella Policy"), which lists the Primary Policy as its underlying professional liability insurance. A copy of the Umbrella Policy is attached hereto as **Exhibit B**. Subject to other terms and conditions, the Umbrella Policy generally "follows form" to the Primary Policy and provides additional limits of insurance in excess of the Primary Policy.

19. Like the Primary Policy, the Declarations to the Umbrella Policy show that it was issued and delivered to BH Eik at its business address in Louisville, Kentucky.

**B. The Excess Policies**

20. Illinois Union, a Chubb company, sold to BH Eik Healthcare Facilities Concurrent Excess Liability Policy No. XHL G72544444 002 for the same policy period (the "Illinois Union Policy"). A copy of the Illinois Union Policy is attached hereto as **Exhibit C**.

21. The Illinois Union Policy generally follows form to the Primary Policy and the Umbrella Policy and provides coverage for defense costs and potential liabilities in relation to the Sherman Action in excess of those policies.

22. National Fire, through its administrator MedPro Group, issued to BH Eik Excess Follow Form Liability Policy No. EN008474 for the same policy period (the "National Fire Policy," and together with the Illinois Union Policy, the "Excess Policies"; the Excess Policies

together with the Primary Policy and the Umbrella Policy, the "Policies"). A copy of the National Fire Policy is attached hereto as **Exhibit D**.

23. The National Fire Policy generally follows form to the Primary Policy and provides coverage in relation to the Sherman Action in excess of the Illinois Union Policy.

## V. THE CLAIMS AGAINST DUBLIN SPRINGS IN THE SHERMAN ACTION

24. Dublin Springs operates Columbus Springs East, an inpatient psychiatric hospital in Columbus, Ohio. On November 16, 2023, Sherman, a former patient of that hospital, filed suit against Dublin Springs and certain of its nurses and staff members in the Court of Common Pleas of Franklin County, Ohio, seeking damages for injuries he allegedly sustained while hospitalized there. He filed an Amended Complaint on November 22, 2024. A copy of the Amended Complaint is attached hereto as **Exhibit E**.

25. The Amended Complaint alleges bodily injuries Sherman suffered while he was a psychiatric inpatient, including injuries from a battery by another patient. It alleges that on November 15, 2022, Sherman was admitted to Columbus Springs East for mental health treatment, and that hospital staff thereafter failed to properly assess and observe him as a high fall risk.

26. The Amended Complaint further alleges that Dublin Springs failed to manage the escalating aggression of another patient, Jequan Broomfield ("Broomfield"), including through deficient treatment, planning, and observation, and that on November 26, 2022, Broomfield punched Sherman in the face while staff members sat behind the nurses' station, causing Sherman to fall, strike his head, and lose consciousness. Additionally, the Amended Complaint alleges that a staff member pushed Sherman to the ground on November 21, 2022.

27. The Amended Complaint alleges that Sherman suffered a severe traumatic brain injury requiring emergency brain surgery and extended hospitalization, and that he has sustained severe and permanent injuries, including lasting neurologic damage.

28. Based on these allegations, the Amended Complaint asserts claims for negligence and battery, and purports to assert a cause of action for violation of Ohio Rev. Code § 5122.29, which guarantees psychiatric patients "reasonable protection from assault or battery by any other person." For each claim, the Amended Complaint seeks compensatory damages, punitive damages, and attorneys' fees.

29. Each of the claims against Dublin Springs seeks damages for bodily injury to a patient of Dublin Springs' hospital arising out of alleged acts, errors, or omissions in the rendering of nursing and mental health services.

30. Dublin Springs timely notified Evanston and the Excess Insurance Companies of the Sherman Action, and Evanston agreed to defend Dublin Springs subject to a reservation of rights, recognizing that the Sherman Action constitutes a Claim for Professional Personal Injury within the Insuring Agreement of the Primary Policy.

31. Pursuant to its right under the Primary Policy to select defense counsel, Evanston retained the law firm of Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois") to defend Dublin Springs in the Sherman Action. Lewis Brisbois defended Dublin Springs through a jury trial that began on September 14, 2026 and continues to represent Dublin Springs in post-trial proceedings.

32. On September 23, 2026, the jury returned a verdict in favor of Sherman and against Dublin Springs. The jury found that Dublin Springs was negligent and allocated 90% of the fault to Dublin Springs and 10% to Broomfield; awarded $1,000,000 in past noneconomic damages, $4,000,000 in future noneconomic damages, and $10,000,000 in punitive damages; and found that Sherman's attorneys' fees should be awarded against Dublin Springs in an amount to be determined by the court.

33. Following the verdict, on October 20, 2026, Dublin Springs filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for New Trial or Remittitur, which remains pending.

34. Applying the jury's allocation of fault and the punitive damages limit in Ohio Rev. Code § 2315.21, the compensatory damages attributable to Dublin Springs total $4,500,000 and the punitive damages total $9,000,000, for a total of $13,500,000, plus post-judgment interest, costs, and attorneys' fees in an amount yet to be determined.

## VI. <u>DEFENDANTS' INCORRECT POSITIONS WITH RESPECT TO COVERAGE</u>

35. In its March 26, 2025 reservation of rights letter, Evanston, through its claim service manager, Markel Service, Inc., purported to reserve the right to disclaim coverage for damages it contends are not covered, and Evanston unilaterally purported to assert a right to seek reimbursement of defense costs for non-covered claims.

36. On November 5, 2026, following the verdict, Evanston supplemented its reservation of rights in the November Letter captioned "Supplemental Coverage Position." Evanston asserted that: (a) the Primary Policy's exclusion for any act, error, or omission in Professional Services or Professional Personal Injury "committed in violation of any law or ordinance" ("Exclusion A") may bar coverage for "the entire award"; (b) Evanston has "no coverage obligation to Dublin Springs for punitive damages" because "punitive damages are uninsurable under Ohio law"; (c) the Primary Policy does not cover any award of Sherman's attorneys' fees; and (d) the Umbrella Policy likewise does not cover punitive damages or attorneys' fees.

37. In the November Letter, Evanston further stated that it would only "participate in the defense" of Dublin Springs, advised Dublin Springs that it may retain personal counsel at its

own expense "to further protect [its] potentially uninsured exposure," reserved the right to raise additional coverage issues or defenses, and expressly reserved the right "to file a declaratory judgment action at any time" to determine its duties of defense or indemnity.

38. The Excess Insurance Companies have followed, or are expected to follow, Evanston's incorrect coverage positions in whole or in part.

39. By letter dated November 6, 2026, MedPro Group, on behalf of National Fire, expressly joined in and adopted the November Letter, asserting that the National Fire Policy follows form to the Primary Policy, "including incorporation of relevant exclusions and definitions as discussed in Evanston's Supplemental Coverage Position."

40. Illinois Union has advised that a written coverage position is forthcoming and, upon information and belief, will likewise follow Evanston's coverage positions in whole or in part.

41. The Excess Insurance Companies' positions are incorrect for the same reasons that Evanston's positions are incorrect.

**<u>The Exclusion A Defense Is Baseless.</u>**

42. Evanston's sole basis for invoking Exclusion A is the trial court's finding that the jury's award was based on Ohio's Patient's Bill of Rights, Ohio Rev. Code § 5122.29, which affords psychiatric patients "reasonable protection from assault or battery by any other person." The jury, however, found that Dublin Springs was negligent as a matter of common law and that its negligence proximately caused Sherman's injury, and it apportioned fault between Dublin Springs and Broomfield.

43. Exclusion A cannot reasonably be interpreted to eliminate coverage for ordinary common law torts of negligence or battery merely because they are reinforced by statute.

44. Evanston sold the Primary Policy to cover a psychiatric hospital for Professional Personal Injury arising out of "nursing, mental health services or treatments." The care and protection of psychiatric inpatients are governed by common law, statute and regulation, and reading Exclusion A to bar coverage whenever a negligence claim is measured by a statutory standard of care would largely eliminate the coverage Evanston sold. The Primary Policy separately addresses intentional and criminal conduct through other exclusions, none of which Evanston has invoked.

45. Alternatively, Exclusion A is ambiguous as applied to ordinary common-law torts, such as negligence in failing to prevent a battery.

**The Punitive Damages Defense Is Groundless Under Policy Wording Providing Coverage for Punitive Damages Sold to Policyholders in Kentucky.**

46. Evanston's position on punitive damages is likewise contrary to the Primary Policy's terms, which are followed in the Umbrella Policy.

47. By endorsement, Evanston modified the Primary Policy to provide coverage for punitive damages. Although the standard policy form within the Primary Policy contains a definition of "Damages" with an exception applicable to "[p]unitive or exemplary damages," Evanston issued the Amendment of Definitions D.1. endorsement deleting that exception and providing coverage for punitive damages.

48. Ignoring that the Primary Policy provides coverage for punitive damages, Evanston in its November Letter instead relies on the exception to the definition of "Damages" for "[m]atters which are uninsurable under the law pursuant to which this Coverage Part shall be construed," and Evanston further asserts that punitive damages are uninsurable "under Ohio law."

49. This insurance coverage dispute, including the interpretation of the Primary Policy, the Umbrella Policy, and the Excess Policies, is governed by Kentucky law, where each of the

policies was sold and delivered, and which does not consider punitive damages to be uninsurable in circumstances like those presented in this case, involving injuries caused by a battery by an individual who is not a manager or even employee of the policyholder or any insured, and was in fact a mental health patient.

50. Moreover, the jury was instructed that it could award punitive damages based on Dublin Springs' liability, "as principal or master," for the conduct of its agents or servants, and the general award does not establish that the punitive damages rest on Dublin Springs' own intentional or knowingly wrongful conduct. This type of vicarious liability for punitive damages is not uninsurable and is not prohibited under Kentucky or Ohio law where the insurance company intentionally provides coverage for that risk of liability.

**Attorney's Fees Based on a Punitive Damages Award Are Insured By the Policies.**

51. Evanston's position on attorneys' fees is likewise unfounded.

52. The attorneys' fees at issue derive solely from the jury's punitive damages finding.

53. The Primary Policy as amended contains an agreement to cover punitive damages as "Damages," and since this claim is derivative of an expressly covered claim, it is likewise covered by Evanston's and the Excess Insurance Companies' policies..

**There Is No Basis for Reimbursement of Defense Costs.**

54. Evanston's purported reservation of a right to reimbursement of defense costs paid to defend Dublin Springs against the Sherman Action is not supported by the Primary Policy.

55. The Primary Policy imposes on Evanston the "right and duty to defend" Claims, and nothing in the Primary Policy grants Evanston a right to recover from any Insured the defense costs Evanston has paid.

56. There is no express or allegedly implied basis to demand any reimbursement of defense costs incurred by Evanston under the obligations it accepted pursuant to the unqualified right and duty to defend contained in the Primary Policy.

57. Evanston's unilateral statement that it will merely "participate in the defense" and unilateral reservation of a right to reimbursement does not limit its obligations.

58. The Primary Policy obligates Evanston to defend claims to which coverage applies, and the defense costs the Primary Policy covers include "costs of appeals." Evanston therefore remains obligated to defend Dublin Springs through post-trial proceedings and any appeal.

59. Dublin Springs has complied, or substantially complied, with all of the terms, provisions, and conditions precedent of the Primary Policy.

## COUNT I – DECLARATORY JUDGMENT

60. Dublin Springs repeats and re-alleges each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

61. Dublin Springs has an actual and present controversy with Defendants regarding their obligations under the Policies to defend and indemnify Dublin Springs with respect to the Sherman Action, including the verdict and judgment entered against it. It is therefore appropriate for this Court to declare the rights of the parties pursuant to 28 U.S.C. §§ 2201–2202 and Rule 57 of the Federal Rules of Civil Procedure. Dublin Springs specifically seeks a declaration of the following:

a. The Sherman Action is a Claim for Professional Personal Injury covered under the Primary Policy, the Umbrella Policy and each of the Excess Policies.

b. Exclusion A does not apply to the Sherman Action.

c. All damages awarded in the Sherman Action including punitive damages and attorneys' fees constitute covered Damages.

d. Evanston has no right to reimbursement of defense costs paid in relation to its duty to defend Dublin Springs.

62. Dublin Springs is entitled to have the Policies interpreted in a reasonable manner that maximizes the available insurance coverage.

63. If there are any ambiguities in the policy language of any insurance policy sold to BH Eik, those ambiguities should be construed in favor of BH Eik and Dublin Springs and against the insurance company that drafted the policy language.

64. Under the circumstances, it is necessary and appropriate for the Court to declare Dublin Springs' rights and Defendants' obligations under the Policies, including Evanston's obligation to defend Dublin Springs through post-trial proceedings and any appeal and Defendants' obligations to indemnify Dublin Springs for the judgment in the Sherman Action.

65. Declaratory relief from this Court will resolve all outstanding issues between Dublin Springs and Defendants regarding Dublin Springs' rights under the Policies.

WHEREFORE, Dublin Springs requests that the Court enter judgment in its favor and against Defendants declaring that Evanston is obligated under the Primary Policy to defend Dublin Springs in the Sherman Action, including through post-trial proceedings and any appeal; that Defendants are obligated to pay all amounts due under their respective Policies, including the judgment, punitive damages, and attorneys' fees awarded against Dublin Springs, up to the applicable limits of liability; that Evanston has no right to reimbursement of defense costs; and that each basis for non-coverage asserted by Evanston, and followed by the Excess Insurance

Companies, is invalid; and awarding Dublin Springs its costs and such other relief as the Court deems just and proper.

Respectfully submitted,

**THOMPSON, MILLER & SIMPSON**

/s/ Joey A. Wright

B. Todd Thompson
Joey A. Wright
734 W Main St.
Louisville, KY 40202
(502) 357-1904
tthompson@tmslawplc.com
jwright@tmslawplc.com

-and-
**REED SMITH LLP**

/s/ John N. Ellison

John N. Ellison (*pro hac vice* to be filed)
Luke E. Debevec (*pro hac vice* to be filed)
Nkora N. Carr (*pro hac vice* to be filed)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
215-851-8100
jellison@reedsmith.com
ldebevec@reedsmith.com
ncarr@reedsmith.com

*Counsel for Plaintiff Dublin Springs, LLC*